

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GEORGE BLUNT, et ux.          :          CIVIL ACTION   **FILED**
                              :
       v.                     :                         OCT 2 3 2008
                              :
BOYD GAMING CORPORATION,      :                         MICHAEL E. KUNZ, Clerk
et al.                        :          NO. 08-285     By _____ Dep. Clerk

MEMORANDUM

Dalzell, J.                                  October 23, 2008

       Plaintiffs George and Loretta Blunt sued defendants

Boyd Gaming Corporation and Marine District Development Co., LLC,

which operate the Borgata Hotel Casino & Spa in Atlantic City,

New Jersey ("Borgata"), for negligent supervision, intentional

infliction of emotional distress, false imprisonment, malicious

prosecution, and loss of consortium.  Defendants now move for

summary judgment on all of these claims except for false

imprisonment and loss of consortium.  Defendants also seek

summary judgment on the requested punitive damages.  We here

resolve that motion.

I.    **Factual Background**

       George Blunt is a seventy-six year old Pennsylvania

State Constable[1].  Compl. ¶ 10.  On Saturday, January 6, 2007,

_____

       [1]Constables are elected Pennsylvania peace officers, though
the office has been abolished in the City of Philadelphia. 13 Pa.
Cons. Stat. Ann. §§ 1-3, 6, 15.  Constables are empowered to keep

Blunt, in his uniform and accompanied by his brother-in-law, Howard Mitchell, drove to Atlantic City, New Jersey to serve a subpoena on Joseph Corbo, the Vice-President and General Counsel of the Borgata.  Id. ¶¶ 8-10.

Blunt arrived at the casino around noon or 12:30 p.m. Pl.'s Mem. Ex. B [Borgata Incident Report] at 1.  He parked in the loading area, got out of the car (Mitchell remained in it), and asked someone in a white uniform where he could find the security desk.  Def.'s Mem. Ex. B [Blunt Dep.] at 50.  The person told Blunt that it was through the employee entrance.  Id.  Not wishing to waste his time going through the entire casino, Blunt went through the nearby door and entered a restricted security area.  Id. at 50-51, 53.  He then walked up to the security booth, tapped the man in the booth on the shoulder, and dropped the subpoena on the desk.  Id. at 55.

At that point, a Borgata security employee approached Blunt and asked him what he wanted.  Blunt Dep. at 55; Pl.'s Mem. Ex. B [Borgata Incident Report] at 1.  Blunt explained that he was there to serve a subpoena on Corbo.  Blunt Dep. at 55;

_____

the peace, enforce local ordinances, conduct investigations at the behest of the court, and, in certain instances, serve process.  Id. §§ 41, 44-46; see also In re Act 147 of 1990, 598 A.2d 985, 986, 990 (Pa. 1991).

Borgata Incident Report at 1.  The employee went into the main security office to discuss the matter with his supervisor.  The supervisor stated that "we could not accept a subpoena on behalf of someone else, and if there was nobody from the Legal Department on premises to accept it, he would have to come back on Monday."  Borgata Incident Report at 1.

Another member of Borgata security, Michael Young, returned to convey this message to Blunt.  Borgata Incident Report at 1.  Blunt reiterated that he had served the subpoena. Id.  When Borgata security personnel began asking questions about who Blunt was, Blunt stated he was "Law Enforcement" and started walking away from the security booth and towards the exit. Borgata Incident Report at 1; Blunt Dep. at 55.

Young and Milton Hendrix of Borgata security followed Blunt.  Borgata Incident Report at 1; Blunt Dep. at 55.  Once out in the loading area, Blunt got into his car.  Id.  Young then asked Hendrix to stand in front of the car so Blunt could not leave.  Borgata Incident Report at 1; Blunt Dep. at 55.  Hendrix did as told and stood in front of the car with both of his hands out.  Borgata Incident Report at 1; Blunt Dep. at 55; Def.'s Mem. Ex. C [Mitchell Dep.] at 34-35.

Young then approached the driver's side window and

3

asked Blunt for identification.  Borgata Incident Report at 1.
Blunt again said that he was "Law Enforcement", and Young
requested to see his badge.  Borgata Incident Report at 1.  Blunt
showed him the emblem on his uniform, but Young did not accept
this as proof.  Borgata Incident Report at 1; Blunt Dep. at 55.
Young then used his cellular phone to call the Atlantic City
police.  Blunt Dep. at 60; Pl.'s Mem. Ex. A at 3.

Eventually, Blunt told Hendrix to get out from in front
of the car.  Blunt Dep. at 62.  Blunt turned on the engine and
began moving forward.  Blunt Dep. at 62; Borgata Incident Report
at 1.  Hendrix attempted to get out of the way, but the bumper of
Blunt's car made contact with his left leg.  Borgata Incident
Report at 1, 4; Blunt Dep. at 62.  Hendrix walked to the medical
station and, after an examination, was cleared to return to work
the same day.  Borgata Incident Report at 2.

After Blunt left the loading area and while Hendrix was
being examined at the medical station, the Atlantic City police
arrived and Borgata security informed them of what had happened.
Borgata Incident Report at 2; Pl.'s Mem. Ex. A at 3.  The Borgata
employees also gave the police with a written statement.  Borgata
Incident Report at 2; Pl.'s Mem. Ex. A at 3.  Hendrix did not
file a complaint against Blunt.  Borgata Incident Report at 2.

4

At no time during these events did Borgata security curse or yell at Blunt, touch him, or come within three feet of him, or do anything that made Blunt feel as though Borgata security was going to physically harm him.  Blunt Dep. at 58; Mitchell Dep. at 34-36.

Shortly after the incident, Blunt received a notice in the mail from the Atlantic City Police Department informing him that he had left the scene of an accident and that he was required to report to the Atlantic City Police Department immediately.  Pl.'s Mem. Ex. A at 1; Blunt Dep. at 71.  Those charges were eventually dismissed.  Blunt Dep. at 71.

## II.  Analysis[2]

---

[2]Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party.  Liberty Lobby, 477 U.S. at 255.

The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986). Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The non-moving

5

George Blunt here sues the defendants for negligent supervision, false imprisonment, malicious prosecution, and intentional infliction of emotional distress.  His wife, Loretta, sues for loss of consortium.  The defendants have moved for summary judgment on all of the claims save those alleging false imprisonment and loss of consortium.  The defendants also seek summary judgment on Blunt's claim for punitive damages.

Before we turn to the substantive law, we must first decide which law applies to each of the claims because the events that precipitated this litigation occurred in New Jersey, but the plaintiffs are citizens of the Commonwealth of Pennsylvania.  Either law could well apply.  As this case has been brought in this Court under our diversity jurisdiction, we apply Pennsylvania choice of law jurisprudence to decide this choice of

---

party must present something more than mere allegations, general denials, vague statements, or suspicions.  Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982).  It is not enough to discredit the moving party's evidence, the non-moving party is required to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257 (emphasis in original). A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence. See Liberty Lobby, 477 U.S. at 249-50.  Also, If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

law problem.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Chin v. Chrysler, LLC, 538 F.3d 272, 278 (3d Cir.2008).

        Under Pennsylvania's choice of law rules, courts use a three step approach.  First, courts see if there is a real conflict, i.e., whether there is indeed a substantive difference between respective state's laws.  Hammersmith v. TIG Ins. Co., 480 F.3d 220, 229-30 (3d Cir. 2007).  If no difference exists, then no real conflict exists and the forum's law applies.  Id. at 230.

        If there is a substantive difference between the competing state's laws, then we move to the second step and examine the governmental policies underlying each law in order to classify the conflict as false, true, or unprovided-for.  Id.  A false conflict exists only when one state's interests would be impaired, and, in this scenario, courts apply the interested state's law.  LeJeune v. Bliss-Salem Inc., 85 F.3d 1069, 1071 (3d Cir. 1996).  An unprovided-for situation occurs when neither state's interests would be impaired if its laws were not applied, and, in that case, "[t]he principle of lex loci delicti, the law of the place of the wrong, supplies the substantive law to be applied in unprovided-for cases."  Garcia v. Plaza Oldsmobile

<u>Ltd.</u>, 421 F.3d 216, 220 (3d Cir. 2005).  A true conflict exists when application of one state's law would impair a governmental policy or interest of the other, at which point courts move to the third step.  <u>Hammersmith</u>, 480 F.3d at 231.

When there is a true conflict, the third step obliges courts to "determine which state has the greater interest in the application of its law."  <u>Id.</u>  Courts weigh the contacts with each state "on a qualitative scale according to their relation to the policies and interests underlying the particular issue."  <u>Id.</u> (internal quotations omitted).  The greater weight tips this scale to the law that courts should apply.

We now turn to Blunt's claims, and will in each instance decide which law applies.[3]

## A.    <u>Intentional Infliction of Emotional Distress</u>

Both New Jersey and Pennsylvania have adopted the Restatement (Second) of Torts's formulation of intentional infliction of emotional distress, which requires a plaintiff to prove that the defendant's conduct was "so outrageous in

---

[3]We note that the defendants do not contest that Borgata security acted within the scope of their employment, and, though the torts averred are intentional torts, the defendants are subject to <u>respondeat superior</u> liability.

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998); Buckley v. Trenton Savings Fund Society, 544 A.2d 857, 863 (N.J. 1988). As no real conflict exists between New Jersey and Pennsylvania law on this subject, we apply Pennsylvania law. Hammersmith, 480 F.3d at 230.

Here, Blunt has presented no evidence from which a reasonable finder of fact could conclude that the Borgata security employees involved in this incident acted in a manner "utterly intolerable in a civilized society." Hoy, 720 A.2d at 754. By his own estimation, Blunt admitted that Borgata security did not use offensive language or put him in fear for his physical safety. Blunt Dep. at 58; see also Mitchell Dep. at 34-36. Blunt admits he brought the emotional distress claim because Borgata security "wouldn't comply and they were running me around a bush in a sense."[4] Blunt Dep. at 58.

---

[4]Q.   The sole reason that you claim you sustained emotional injuries from whatever happened inside the Borgata was because they didn't want to accept the subpoena, correct?
    A.   Correct.
    Q.   Any other reason?
    A.   And their attitudes.
    Q.   Did they at any point curse or yell at you?
    A.   No.

Whatever disrespect the Borgata security may have shown Blunt, it does not rise to the level of outrageousness needed to sustain a claim for intentional infliction of emotional distress. See e.g., Papieves v. Lawrence, 263 A.2d 118 (Pa. 1970) (defendant struck and killed plaintiff's son with automobile, failed to notify authorities or seek medical assistance and buried the son's body in a field where it was discovered two months later and returned to parents); Banyas v. Lower Bucks Hospital, 437 A.2d 1236 (Pa. Super. 1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979) (defendant's team physician released information to the press that plaintiff was suffering from a fatal disease when physician knew such information was false).

We will therefore grant summary judgment for the defendants on the claim of intentional infliction of emotional distress.

---

Q.   At any point did they interfere with our personal space, touch you, get within three feet of you?
A.   No.

Blunt Dep. at 58.

10

B.   **Malicious Prosecution**

Both Pennsylvania and New Jersey require that for a claim of malicious prosecution the plaintiff must establish that the defendant "instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings [were] terminated in favor of the plaintiff." Kelley v. General Teamsters, Chauffeurs and Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988); Helmy v. City of Jersey City, 836 A.2d 802, 806 (N.J. 2003) (plaintiff must prove "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff"). As no substantive differences exist between the formulas of these two states' laws, we will apply Pennsylvania law to this claim. Hammersmith, 480 F.3d at 230.

1.   **Instituting Proceedings**

Blunt cannot establish that the defendants instituted any proceedings against him. Pennsylvania takes much of its law of malicious prosecution from the Restatement (Second) of Torts. Galluci v. Phillips & Jacobs, 614 A.2d 284, 290 (Pa. Super.

1992). According to the Restatement, one initiates criminal
proceedings "by making a charge before a public official or body
[that] require[s] the official or body to determine whether
process shall or shall not be issued against the accused." §
653, comment c. A defendant can be liable for malicious
prosecution only if he or she "induc[ed] a third person, either a
private person or a public prosecutor, to initiate [criminal
proceedings], [or] prevail[ed] upon a public official to
institute them by filing an information." Id. § 653, comment d.
But "[w]hen a private person gives to a prosecuting officer
information that he believes to be true, and the officer in the
exercise of his uncontrolled discretion initiates criminal
proceedings based upon that information, the informer is not
liable." Id. § 653, comment g (emphasis supplied).

       Blunt has here presented no evidence that the
defendants induced or prevailed upon anyone to initiate
proceedings against him. The Borgata security personnel did call
the police, and when the police arrived they took statements from
the security personnel involved in the incident. Borgata
Incident Report at 2; Pl.'s Mem. Ex. A at 3. Blunt offers no
evidence that any of the statements given to the police was
false, let alone maliciously so. Blunt also presents no evidence